Commonwealth *v.* Smith, Appellant.

Argued December 19, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

Louis F. McCabe, with him Thomas J. Minnick, Jr., for appellant.

John A. Boyle, Assistant District Attorney, with him Charles F. Kelley, District Attorney, for appellee.

OPINION BY BALDRIGE, J., January 30, 1940:

The appellant, Francis Smith, was tried on bills of indictment charging murder and manslaughter. He was convicted of involuntary manslaughter only, and sentenced to Philadelphia prison for a period of not less

than one year and not more than three years. A new trial is now sought.

Smith was employed as a guard at the Holmesburg prison. This prosecution followed the death of Frank Camodeca who was found dead in a cell in that part of the prison known as Klondike, where insubordinate prisoners were sent for punishment, which included their being subjected to excessive heat. We have this day filed an opinion in *Com. v. Craven*, 138 Pa. Superior Ct. 436, 11 A. 2d 191, where we detailed to a considerable length essential facts relating to the tragedy out of which this prosecution arose, which need not now be repeated.

Late Sunday afternoon, August 21, 1938, Captain of the Guards Maguire visited Klondike. Under his orders, the heat was turned off. The Commonwealth alleged that very shortly thereafter the defendant, of his own volition, turned the heat on again. Defendant specifically denied the charge and asserted that all his acts in connection with the punishment of prisoners in Klondike were done pursuant to orders received from his superior.

This appeal presents three propositions. The first is that the trial judge erred in defining to the jury "involuntary manslaughter," as follows:

"Involuntary manslaughter is where it plainly appears that neither death nor great bodily harm was intended, but that death is accidentally caused by some unlawful act not amounting to a felony, or by an act not strictly unlawful in itself, but done in an unlawful manner and without due caution.

"In testing a killing to determine whether it constitutes involuntary manslaughter, the presence of mere carelessness or negligence is not enough, there must be present a certain element of rashness or recklessness, which in the eyes of the law approaches an unlawful act. The word reckless imports or comprehends some-

thing more than carelessness, it denotes rather rashness or utter heedlessness."

The alleged vice of this instruction is that the jury was told that "there must be present a certain element of rashness or recklessness, which in the eyes of the law *approaches* an unlawful act." The appellant argues that this language means that a rash or heedless act which merely comes close to and does not reach the status of an unlawful act is sufficient to warrant a conviction of involuntary manslaughter, and is, therefore, not a correct statement of the law; that as long as one's conduct merely approaches but does not reach the point of being an unlawful act, it remains a lawful act, and, therefore, cannot be made the basis of the charge of involuntary manslaughter. If "approach" is limited in its meaning to "draw near," the appellant's argument would carry much weight.

Webster's New International Dictionary defines "approach," inter alia, as follows: "To draw near in a figurative sense; to approximate as, he approaches to the character of an able statesman." Thus we find it synonymous with "approximate," and we think it was used by the judge in that sense.

We have no doubt that the jury understood from the instructions given that to convict of involuntary manslaughter it was necessary to find that defendant's conduct was so rash or reckless as to approximate or amount to an unlawful act. In *Com. v. Gill et al.*, 120 Pa. Superior Ct. 22, 35, 182 A. 103, in defining involuntary manslaughter, we said, "—where it is alleged that death resulted from the doing of an act 'lawful in itself, but done in an unlawful manner and without due caution and circumspection,' it is impracticable to attempt to define the exact degree of negligence that must be shown in order to sustain a conviction, but there should be present some element of rash or reckless conduct, which *approximates* (italics supplied) acting in an *unlawful* manner." See, also, *Com. v. Matteo*, 130 Pa. Su-

perior Ct. 524, 197 A. 787. The appellant has endeavored to convince us that the reasoning and conclusion in those two cases are erroneous, but he has not persuaded us to that view.

Any doubt that might possibly have arisen in the juror's minds as to the meaning of "approach," as used by the judge in the main body of his charge, was removed by his statement when passing upon the appellant's fourth point, which reads as follows:

"If Francis Smith (this defendant) was acting under orders of his immediate superiors, while he was at the Prison, on August 19, 20, 21 and 22, 1938, and was carrying out these orders to the best of his ability, without any knowledge on his part that by so doing (he) would cause the death of anyone in the Isolation Block, the jury should return a verdict of 'not guilty'." The judge affirmed the point with this definite qualification: "That if he *committed an unlawful act, and that unlawful act* was the proximate cause of the death of Camodeca, the defendant would not be protected from the consequences of his act, regardless of the fact that he was acting under the orders of his superior or superiors." (Italics supplied.) Thus it clearly appears that the jury was told that they must find defendant committed an unlawful act before they could convict.

We are of the opinion that, considering the instructions given the jury, in their entirety, the explanation of the essential elements in the crime of involuntary manslaughter was not conflicting, misleading or inadequate.

The second contention of the defendant is that as it was alleged that he committed a number of acts it was the duty of the trial judge to charge more specifically which act would warrant a conviction of involuntary manslaughter. The charge distinctly discloses that the specific act complained of was the defendant's turning on the steam after Captain Maguire had turned it off. We think there can be no doubt about that. There was reference in the charge to the replies the defendant

made to the prisoners' pleas for relief to the effect that the punishment they were undergoing was not to be compared with what others had experienced in Klondike; that "he had seen men come out of there when they could not even so much as raise a finger," and one or two other statements of a similar character. It plainly appears, however, that the Commonwealth was not relying upon a conviction for what Smith said, but for what he did. The court charged as follows:

"The Commonwealth contends that as part of the punishment at Klondike, in addition to the deprivation of the normal privileges and comforts of the regular prison, the rations were reduced and confined to bread and water, and that heat was used as part of the punishment, and that although the heat became unbearable on Sunday, and had been turned off by order of Captain Maguire, the defendant turned it on again ...... ." Thus, and all the way through the charge, it definitely appears that his action in turning on the heat was the gravamen of the Commonwealth's charge.

The last complaint is that the trial judge's charge on the question of defendant's rights and duties with respect to following or disregarding the orders of his superiors was so confusing as to constitute prejudicial error. We think it was not.

In the answer to the fourth point for charge, to which we heretofore referred, the court very definitely stated that if defendant clearly committed an unlawful act, he would not be protected from the consequences thereof, regardless of the fact that he was acting under the orders of his superior or superiors. There is nothing obscure about that language. When the judge asked if there were any suggestions to be made, the attorney for the appellant said, "No, sir," and he took the occasion to compliment the judge by stating, "I may say I think you did a splendid job in the charge." The defendant's counsel evidently was satisfied, at the end of the trial, that the charge was not inadequate or

erroneous, that the trial judge clearly defined the issues and gave the defendant all the benefits to which he was entitled. We are of the same impression. The jury apparently had a clear conception of all the issues and exercised a discrimination in rendering a verdict of involuntary manslaughter, which was fully justified by the evidence.

The assignments of error are overruled. The judgment is affirmed, and it is ordered that the appellant appear in the court below at such time as he may there be called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.